**In re the Marriage of Joyce A. POLITTE, Respondent,**

v.

**Richard L. POLITTE, Appellant.**

**No. 51176.**

Missouri Court of Appeals, Eastern District, Division One.

March 31, 1987.

Daniel P. Card II, Alisse C. Camazine, Robert D. Beekman, St. Louis, for appellant.

Leslie A. Broome, St. Charles, for respondent.

SATZ, Presiding Judge.

In this action, the father of three children sought money damages from the mother, his ex-wife, for interference with his visitation and temporary custody rights. The trial court dismissed the father's petition for failure to state a claim upon which relief can be granted. The father appeals. We affirm.

In his petition, the father alleges: A dissolution decree was granted in 1975; the mother was awarded custody of the three minor children and the father was awarded temporary custody and visitation rights. In 1980, the mother informed the father she no longer wanted custody. During the next three months, the mother "surreptitiously reassumed custody", and, since that time, the mother has refused to allow the father to exercise his visitation and temporary custody rights. The mother subjected the minor children to an unfit moral atmosphere to the detriment of the welfare of the children, and, as a result the father suffered continuous and extreme emotional

distress and suffering. The mother attempted to turn the father's children against him and to poison their relationship with him. As a result of the mother's willful, wanton and malicious actions, the father suffered severe emotional distress and extreme depression, damaging him in the amount of $150,000. The father also sought $50,000 damages for the loss of the society of the children and sought punitive damages in the amount of $50,000. These allegations, the father contends, state a claim for relief under § 700, Restatement (Second) of Torts, (§ 700), and § 700, the father argues, has been adopted as law in Missouri.

The tort the father attempts to allege originated as a claim for wrongfully seizing or retaining custody of a child. Prosser and Keeton, Torts § 124 at 924–925 (5th ed 1984). This claim was based upon the deprivation of the child's services, and, since at early common law the father was the only person entitled to the child's services, only the father could pursue the claim. *Id; See, Kipper v. Vokolek*, 546 S.W.2d 521, 525 (Mo.App.1977). Upon the father's death, a waiver of his rights, or upon divorce where the mother was awarded custody, the mother was entitled to bring the action. *Kipper v. Vokolek* at 525.

Under the so-called modern view, the essence of the claim is the interference with the parent's custodial rights, not the loss of the child's services. *Prosser, supra* at 924–925. This view was reflected in 1938 in § 700, Restatement of Torts and is now reflected in § 700, Restatement (Second) of Torts. Section 700 provides:

> § 700 Causing Minor Child to Leave or not to Return Home
>
> One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent *legally entitled to its custody* or not to return to the parent after it has been left him, is subject to liability to the parent. (emphasis added.)
>
> Comment:
>
> . . . .

> c. *When both parents entitled to custody and earnings.* (emphasis theirs)
>
> When parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other. *When by law only one parent is entitled to the custody and earnings of the child, only that parent can maintain an action under the rule stated in this Section.* One parent may be liable to the other parent for the abduction of his own child if by judicial decree the sole custody of the child has been awarded to the other parent. (emphasis added).
>
> d. *Necessity of loss of service.* (emphasis theirs)
>
> Under the rule stated in this Section, loss of service or impairment of ability to perform service is not a necessary element of a cause of action. . . . The deprivation to the parent of the society of the child is itself an injury that the law redresses.

Our colleagues in the Southern District recognized that this tort may exist between parents involved in a post-marital conflict. *See, Kramer v. Leineweber*, 642 S.W.2d 364 (Mo.App.1982); *Kipper v. Vokolek*, 546 S.W.2d 521 (Mo.App.1977). In recognizing the tort in *Kipper,* the court read the language of § 700 literally or, at least, narrowly. *Kipper,* at 525–527. In *Kipper,* the father sought money damages from his ex-wife and her new husband for "unlawfully decoying or enticing away or harboring his two minor daughters. . . ." *Id.* at 525. In affirming the dismissal of the father's petition, the court found the ex-wife had been awarded custody of the two children and also found their custody had not been changed. Therefore, the court concluded, the father "did not plead facts upon which relief could be granted" because he "did not plead facts showing his lawful entitlement to the custody of his daughters at the time the averred tort was committed". *Id.* at 527. Although the court did not expressly define the father's legal relation to his daughters, it clearly implied his

visitation rights or right to temporary custody were not significant enough to be protected by this tort.

The father here argues this limitation is neither sound nor logical. This tort, he contends, is designed to protect parental relations generally, not simply the right to permanent custody. Interference with a parent's right to temporary custody or visitation rights, he contends, can cause that parent emotional damage equivalent to the emotional damage caused by interference with permanent custodial rights. Therefore, the father argues, the right to temporary custody and visitation rights should have the same dignity as permanent custodial rights and should come with the purview and be protected by the § 700 tort. We disagree.

The father relies upon *Ruffalo v. United States*, 590 F.Supp. 706 (W.D.Mo.1984). In *Ruffalo*, the plaintiff mother was awarded custody of the minor child. *Id.* at 707. Although the mother had legal custody, the child was placed in the "possession" of the father because both the father and the minor child were taken into the Witness Protection Program. *Id.* Under the arrangement, the mother was given "reasonable visitation rights" and weekend "possession" for one day. *Id.* The mother, however, was denied all contact with the child and sued for damages in the district court. *Id.* The district court used reasoning similar to the argument of the father here and concluded Missouri courts would at least recognize the right of a parent having visitation rights to sue for interference with those rights under § 700. *Id.* at 712. The court noted: "The state courts could well restrict this type of claim to situations that are not 'insubstantial in duration and effect.'" *Id.* at 712.

■ The reasoning of the district court and of the father here is not persuasive. The father rests his claim on § 700. Comment C to § 700, however, expressly states:

> When parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other. When by law only one parent is entitled to the custody and earnings of the child, only that parent can maintain an action under the rule stated in this Section.

Clearly, only a custodial parent can sue for custodial interference when he or she possesses superior custody rights to the child. The father cannot rest his claim on § 700 and ignore those Comments explaining the breadth and meaning of § 700.

Moreover, the jurisdictions who have either recognized or adopted § 700 have done so in those instances in which the custodial parent is seeking damages from the non-custodial parent or a third party for interference with custodial rights. *See* Note, *The Tort of Custodial Interference Toward a More Complete Remedy to Parental Kidnappings*, 1983 U.Ill.L.Rev. 229, 240–246 (1983). *See, e.g., Wood v. Wood*, 338 N.W.2d 123 (Iowa 1983); *Lloyd v. Loeffler*, 539 F.Supp. 998 (E.D.Wis.) aff'd 496 F.2d 489 (7th Cir.1982) (interpreting Wisconsin law); *Fenslage v. Dawkins*, 629 F.2d 1107 (5th Cir.1980) (interpreting Texas law). The single case, aside from *Ruffalo v. United States*, addressing a claim by a non-custodial parent for interference with his visitation rights expressly refused to extend the claim to a non-custodial parent. *See, Owens v. Owens*, 471 So.2d 920, 922 (La.App.1985). In *Owens*, the court stated:

> [U]nder the civil law, in the absence of a statute conferring such right, there is no right of action for damages for the loss of the services or support or companionship or affections of a human being.[1]

■ Furthermore, and, perhaps most important, we question the need of recognizing the tort claim defined in § 700. *See, Friedman v. Friedman*, 79 Misc.2d 646, 361 N.Y.S.2d 108 (N.Y.Sup.Ct.1974); *McGrady v. Rosenbaum*, 62 Misc.2d 182, 308 N.Y.S.2d 181 (N.Y.Sup.Ct.1970). The primary goal of this tort is the vindication of one parent against the other, not necessarily the best interests of the child. The

---

**1.** The "civil law" referred to may be Roman civil law rather than English common law.

interests of the child kept by one parent in violation of a court decree are best served by a prompt return of the child to the parent who the court had determined to be the more qualified custodian. Prompt return of the child can be accomplished by habeas corpus, contempt and, if the facts warrant it, civil actions under the Uniform Child Custody Jurisdiction Acts, *see, e.g.,* §§ 452.440–550 RSMo.1978 or the Parental Kidnapping Prevention Act, Pub.L. No. 96–611, § 6–10, 94 Stat. 3568–3573 (18 U.S.C. § 1073; 28 U.S.C. § 1738A; 42 U.S.C. §§ 654, 663, 1305) (1980). Criminal sanctions can be invoked under our "Interference with Custody" statute. § 565.150 RSMo.1978. *See, State v. Edmisten,* 674 S.W.2d 576 (Mo.App.1984).

Arguably, the economic pressure of a money judgment may persuade the obdurate parent to return the child. But if this incidental benefit is our goal, why preclude the custodial parent from an action for the alienation of a child's affection. *See, Hester v. Barnett,* 723 S.W.2d 544, 554–56 (Mo.App.1987). *See, also,* § 699 Restatement (Second) of Torts. Moreover, if society now demands that money damages be granted to a parent for emotional injury caused by interference with parental relations, in general, the amorphous tort of intentional infliction of emotional distress, See § 46 Restatement (Second) of Torts; *see, e.g., Pretsky v. Southwestern Bell Telephone Company,* 396 S.W.2d 566 (Mo. 1965); or the enigmatic action of prima facie tort, *see,* § 870 Restatement (Second) of Torts; *see, e.g., Porter v. Crawford & Company,* 611 S.W.2d 265 (Mo.App.1980), are adequate procedural and substantive weapons.[2]

If these weapons are not sufficient for the arsenal of those parents engaged in post-marital warfare, we can, as other jurisdictions have, grant relief under § 700 only to the custodial parent, as intended. We find no reason to extend relief to the non-custodial parent. Disarmament is needed to limit post-marital warfare, not additional armament to increase it.

Judgment affirmed.

CRIST and KELLY, JJ., concur.

---

**2.** On appeal, the father does not argue that his petition alleges either one of the latter two torts. This is understandable. His petition simply does not allege either tort.