CITIBANK, N.A., Plaintiff,

v.

K–H CORPORATION and Kelsey–Hayes Company, Defendants.

No. 89 Civ. 3609 (PKL).

United States District Court,
S.D. New York.

Aug. 22, 1990.

Latham & Watkins (John D. Shyer, New York City, James A. Cherney, Robert L. Stout and Stephen M. McJohn, Chicago, Ill., of counsel), for plaintiff.

Cahill Gordon & Reindel (Thomas J. Kavaler, Howard G. Sloane, Jonathan D. Thier, Katherine B. Harrison and Daniel Cantor, of counsel), New York City, for defendants.

## ORDER AND OPINION

LEISURE, District Judge:

This matter is before the Court on a motion filed by defendants K–H Corporation ("K–H Corp.") (formerly known as Fruehauf Corporation ("Fruehauf"))[1] and Kelsey–Hayes Company ("Kelsey–Hayes") to dismiss plaintiff Citibank, N.A.'s ("Citibank") third amended complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

This litigation arises from a commercial lending transaction involving plaintiff Citibank and Grabill Aerospace Industries, Ltd. ("GAIL"), which was entered into, in part, to fund a stock purchase agreement involving GAIL and defendants Fruehauf and Kelsey–Hayes. Citibank brought suit against Fruehauf and Kelsey–Hayes claiming common law fraud and violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, arising out of the lending transaction. The jurisdiction of

---

**1.** To minimize confusion, the Court will refer to K–H Corp. as Fruehauf throughout this opinion.

this Court is predicated on both federal question jurisdiction and diversity of citizenship.

On June 25, 1987, GAIL entered into a stock purchase agreement with Fruehauf and Kelsey–Hayes, a wholly-owned subsidiary of Fruehauf, to purchase the stock of four subsidiaries of Fruehauf for $150 million. Third Amended Complaint ("Complaint"), ¶ 8, and Exhibits A and B. The Fruehauf subsidiaries, SPECO Corporation, Heintz Corporation, Utica Corporation, and Compositek Holdings, Inc. (collectively, the "Fruehauf subsidiaries"), were engaged in various aspects of the aerospace industry. The stock purchase agreement provided that GAIL would deliver the acquisition price of $150 million in cash to Fruehauf via wire transfer at the closing, on or about July 31, 1987.[2]

To finance this acquisition, GAIL entered into a secured credit agreement with Citibank on August 3, 1987, whereby Citibank agreed to lend GAIL up to $147.5 million, consisting of $50 million from the issuance of mezzanine acquisition notes, a term loan of $75 million, and a revolving line of credit of up to $22.5 million. Complaint, ¶ 11, and Exhibit C. One-hundred thirty million dollars ($130 million) of the loan was earmarked to finance GAIL's acquisition of the Fruehauf subsidiaries, while the remaining $17.5 million of the loan was available for GAIL's working capital needs on a revolving credit basis. As collateral security for the loan, William J. Stoecker ("Stoecker"), the sole shareholder of GAIL, pledged the stock of GAIL, and GAIL pledged the stock of the Fruehauf subsidiaries, to Citibank. Complaint, ¶ 12.

As a condition precedent to Citibank's financing obligations, the secured credit agreement required Stoecker to make a $20 million cash contribution to GAIL which would be utilized by GAIL to fund a portion of the acquisition purchase price. Complaint, ¶ 13, and Exhibit C, Article XI, § 11.1.1. Thus, GAIL would obtain $130 million of the acquisition funds from a portion of its Citibank loan, and $20 million of the acquisition funds from Stoecker's equity contribution.

The complaint alleges that during the week prior to the closing, Stoecker telephoned Richard Darke ("Darke"), Fruehauf's general counsel, and told him that he would be unable to provide the entire $20 million cash capital contribution to GAIL before closing. Complaint, ¶ 16. Darke and Stoecker allegedly agreed that, at the closing, Fruehauf would accept $143 million cash from GAIL and a $7 million promissory note in Fruehauf's favor executed by Stoecker. Complaint, ¶ 17. The complaint further alleges that at the closing on August 6, 1987, Fruehauf accepted Stoecker's $7 million promissory note, and wired $7 million of its own funds into the bank account designated for receipt of the $150 million purchase price for the acquisition. Complaint, ¶¶ 18–19. Kelsey–Hayes allegedly had knowledge of Fruehauf's $7 million loan to Stoecker. Complaint, ¶ 19. Stoecker, Fruehauf and Kelsey–Hayes did not disclose to Citibank the $7 million loan. Complaint, ¶ 19.

Citibank advanced $130 million to GAIL for the acquisition price at the closing, pursuant to the secured credit agreement. Complaint, ¶ 27. Approximately three weeks later, Stoecker repaid the $7 million loan to Fruehauf. Defendants' Reply Memorandum of Law, at 5. Eventually, GAIL defaulted on its loan from Citibank. Defendants' Memorandum of Law, at 2. Citibank attempted to realize $150 million from the stock pledged to it as collateral— the GAIL stock and the stock of the Fruehauf subsidiaries—it was unable to do so. Plaintiff's Memorandum of Law, at 7.

Citibank commenced this action against Fruehauf on May 23, 1989, alleging common law fraud. The Court's jurisdiction arises out of the diversity of citizenship of the parties, as Citibank is a national banking association located in New York, and Fruehauf is a Delaware corporation with its principal place of business in Michigan.

---

**2.** Pursuant to an amendment to the stock purchase agreement on August 3, 1987 (Complaint, Exhibit B), the closing actually occurred on August 6, 1987. Defendants' Memorandum of Law, at 3.

On June 26, 1989, Fruehauf moved to dismiss the complaint for failure to plead fraud with particularity, pursuant to Fed.R.Civ.P. 9(b). Following a pre-trial conference on July 7, 1989, Fruehauf withdrew its motion to dismiss, and on July 14, 1989, Citibank served its first amended complaint. On March 5, 1990, Citibank filed a second amended complaint, adding claims under Section 10(b) of the Securities Exchange Act of 1934. Citibank filed a third amended complaint on April 10, 1990, adding Kelsey–Hayes as a defendant.[3] On April 12, 1990, Fruehauf and Kelsey–Hayes filed the instant motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## DISCUSSION

▉▉▉ The well-known standard on a Rule 12(b)(6) motion dictates that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The purpose of a motion to dismiss under Rule 12(b)(6) is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends to offer. *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). The district court should not grant the motion simply because the possibility of ultimate recovery is remote. *Id.* at 779 (*citing Scheuer v. Rhodes*, 416 U.S.

232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

"In deciding a motion to dismiss, the Court must accept the plaintiff's allegation of facts as true together with such reasonable inferences as may be drawn in its favor." *Landy v. Mitchell Petroleum Technology Corp.*, 734 F.Supp. 608, 615 (S.D.N.Y.1990) (*citing Murray v. City of Milford, Connecticut*, 380 F.2d 468, 470 (2d Cir.1967)). "[T]he district court must limit itself to a consideration of the facts alleged on the face of the complaint, and to any documents attached as exhibits or incorporated by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989) (citations omitted); *see also* Wright and Miller, *Federal Practice and Procedure*, § 1356, at 298–99. Thus, this Court has dismissed a complaint where the necessary factual allegations in support of a Section 10(b) claim were contained in the plaintiff's memorandum of law, but were not adequately pled in the complaint. *Goldman v. McMahan, Brafman, Morgan & Co.*, [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,354, at 96,809, 1987 WL 12820 (S.D.N.Y.1987).

### A. Section 10(b) Claims

Fruehauf and Kelsey–Hayes argue that the complaint does not adequately allege Section 10(b) claims against them, as the alleged fraud did not occur "in connection with" the purchase or sale of securities, and Citibank has not adequately pled loss causation. Each of these issues will be discussed in turn.[4]

### 1. The "In Connection With" Requirement

▉▉▉ In order to bring a suit under Section 10(b) of the Securities Exchange Act of 1934, the alleged fraud must have occurred "in connection with the purchase or sale of

---

**3.** Kelsey–Hayes, a wholly-owned subsidiary of Fruehauf, is a Delaware corporation with its principal place of business in Michigan. Thus, there is complete diversity of citizenship in this action.

**4.** Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the

mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

securities." 15 U.S.C. § 78j. The "purchase or sale" of securities which Citibank alleges in the complaint is Stoecker's pledge of GAIL's stock, and GAIL's pledge of the Fruehauf subsidiaries' stock, as collateral for Citibank's loan to GAIL. Complaint, ¶¶ 12, 38. It is clear under the law that a pledge of securities may under certain circumstances be a "purchase or sale" of securities under Section 10(b). *See Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 939 (2d Cir.1984); *Mallis v. Federal Deposit Insurance Corp.*, 568 F.2d 824, 830 (2d Cir.1977).[5]

More specifically, to recover on a Section 10(b) claim, a plaintiff " 'must allege material misstatements or omissions indicating an intent to deceive or defraud *in connection with* the purchase or sale of a security.' " *McMahan & Company v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 581 (2d Cir.1990) (*quoting Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986)) (emphasis added). "The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be." *Chemical Bank, supra,* 726 F.2d at 943; *see also Saxe v. E.F. Hutton & Company, Inc.*, 789 F.2d 105, 108 (2d Cir.1986).

"To satisfy the 'in connection with' requirement, plaintiff may not allege fraudulent acts which merely happened to involve [securities] in some way. The 'in connection with' requirement mandates that the alleged fraud concern the fundamental *nature* of [securities]: namely, the characteristics and attributes that would induce an investor to buy or sell the particular [securities]." *Kearney v. Prudential–Bache Securities, Inc.*, 701 F.Supp. 416, 424 (S.D. N.Y.1988). Thus, "[t]o fall within Section 10(b), misrepresentations must have some direct pertinence to a securities transaction." *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 847 (2d Cir.1986).

In the complaint, Citibank alleges that Fruehauf and Kelsey–Hayes fraudulently misrepresented the amount which Fruehauf received from GAIL as payment for the stock of the Fruehauf subsidiaries, by failing to disclose that Fruehauf received a $7 million promissory note from Stoecker in lieu of cash as part of the acquisition price. Complaint, ¶¶ 19–29. Citibank alleges that it relied on Fruehauf and Kelsey–Hayes' misrepresentation, and thus was induced to proceed with its $130 million loan to GAIL for the purchase of the Fruehauf subsidiaries. Complaint, ¶¶ 30, 35. Citibank further alleges that Fruehauf and Kelsey–Hayes' misrepresentation was made "in connection with the pledge of the stock of GAIL and its subsidiaries," and that it "relied on such stock in assessing the creditworthiness of GAIL and its subsidiaries and as collateral security for the financing and other credit extended to GAIL." Complaint, ¶ 38.

Fruehauf and Kelsey–Hayes argue that Citibank has not satisfied the "in connection with" requirement of Section 10(b), as Citibank does not allege how the misrepresentation affected in any way the nature or value of the securities involved. Fruehauf and Kelsey–Hayes argue, in essence, that the link between the alleged misrepresentation and the pledge of securities is too tenuous to state a claim under Section 10(b).

---

5. In holding that the "in the offer or sale of any securities" requirement of Section 17(a) of the Securities Act of 1933 is satisfied when stock is pledged as collateral for a loan, the Supreme Court has noted:

   The economic considerations and realities present when a lender parts with value and accepts securities as collateral security for a loan are similar in important respects to the risk an investor undertakes when purchasing shares. Both are relying on the value of the securities themselves, and both must be able to depend on the representations made by the transferor of the securities, regardless of whether the transferor passes full title or only a conditional and defeasible interest to secure repayment of a loan.

   *Rubin v. United States,* 449 U.S. 424, 431, 101 S.Ct. 698, 702, 66 L.Ed.2d 633 (1981).

In *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir.1984) (Friendly, J.), a bank loaned money to a parent corporation, which pledged the stock of its subsidiary corporation as collateral. Eventually, the parent corporation defaulted on its loan. The bank sued the parent corporation's accountants, alleging that it was induced to lend the parent corporation money based on misleading audits prepared by the accountants, and that such misrepresentations were in connection with the pledge of the subsidiary's stock. *Id.* at 932–33. In deciding *Chemical Bank*, Judge Friendly wrote that "it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part." *Id.* at 943. Thus, the Second Circuit held that the accounting firm's allegedly false information concerning the financial condition of the parent corporation was not made "in connection with" the parent corporation's pledge of the subsidiary's stock, because the alleged misrepresentation related only to the parent corporation, and not to the value of the subsidiary's stock. *Id.* at 944–45.

The Court recognizes that the facts of *Chemical Bank* are dissimilar to the facts of the case at bar, and that the failure of the plaintiff in *Chemical Bank* to satisfy the "in connection with" requirement may be more clear there than in the case at bar. Still, the teaching of *Chemical Bank*, as articulated by Judge Friendly and interpreted in later cases, is that the "in connection with" requirement of Section 10(b) will not be satisfied unless the misrepresentation is related to the nature or value of the securities pledged as collateral. *See Kearney, supra,* 701 F.Supp. at 424. In the case at bar, the alleged misrepresentation involved the ability of the sole shareholder of a corporation to make a cash equity contribution to the corporation as a condition precedent to the corporation receiving credit. The Court must rule that this misrepresentation did not relate to the nature or value of the corporation's stock, or of the Fruehauf subsidiaries' stock, and thus was not made in connection with the purchase or sale of securities.

First, with regard to the pledge of the GAIL stock, Citibank has not sufficiently pled how the nature or value of this stock was misrepresented. Under the terms of the secured credit agreement, Stoecker was to make a $20 million cash equity contribution to GAIL, which would most probably be paid out as part of the acquisition price paid by GAIL for the stock of the Fruehauf subsidiaries. As the transaction eventually occurred, Stoecker contributed $13 million in cash to GAIL, and gave Fruehauf a $7 million promissory note. The note was fully paid in three weeks. The Court cannot conclude that the non-disclosure of this substitution of a promissory note for cash was in connection with the nature or value of the stock of GAIL.

Second, with regard to the pledge of the stock of the Fruehauf subsidiaries, Citibank has not sufficiently pled how the nature or value of this stock was misrepresented. Citibank argues that the holding of the Supreme Court in *Rubin v. United States, supra,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633, settles this issue in its favor. In *Rubin,* a corporation pledged as collateral for a bank loan the stock of six companies. Officers of the corporation substantially misrepresented the value of this stock, by arranging for fictitious quotations to appear in a recording service and a newspaper. Some of the stock turned out to be of "shell" corporations or "rented" from its true owners. The Supreme Court held that such misrepresentations took place "in the offer or sale of any securities" under Section 17(a) of the Securities Act of 1933. *Id.* at 425–31, 101 S.Ct. at 699–702.

Citibank argues that "[t]he fraudulent misrepresentations and concealments in the present case are even more direct than in *Rubin.* Rather than relying on fictitious quotes of stock prices, Defendants staged a fictitious transaction on the same date in the same conference room that the pledge was made, with the specific intent to deceive Citibank with respect to the terms upon which the pledged securities were actually acquired." Plaintiff's Memorandum of Law, at 10. The Court disagrees. Citi-

bank had already fully investigated the value of the stock of the Fruehauf subsidiaries, and had decided to accept the stock as partial collateral for the loan to GAIL. The last minute substitution of a $7 million promissory note in place of cash as part of Stoecker's equity contribution to GAIL, and therefore as part of the consideration paid out for the stock of the Fruehauf subsidiaries, does not sufficiently relate to the nature or value of the stock of the Fruehauf subsidiaries. In any event, the misrepresentations in *Rubin* went directly to the nature and value of the securities pledged as collateral, and should clearly, for reasons of policy and common sense, be within the ambit of the federal securities laws.[6]

### 2. The Causation Requirement

■ "In order to recover under Section 10(b), a plaintiff must establish that the misrepresentation complained of caused the injury suffered. To establish causation, the plaintiff must show 'both *loss causation*—that the misrepresentations or omissions caused the economic harm—and *transaction causation*—that the violations in question caused the [plaintiff] to engage in the transaction in question.'" *Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 313 (2d Cir.1985) (*quoting Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 380 (2d Cir.1974) (emphasis in original), *cert. denied*, 421 U.S. 976, 95

S.Ct. 1976, 44 L.Ed.2d 467 (1975)); *see also Horwitz v. AGS Columbia Associates*, 700 F.Supp. 712, 721 (S.D.N.Y.1988). Thus, the question is whether the loss suffered was a reasonably foreseeable result of the alleged fraud. *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.*, 801 F.2d 13, 20–21 (2d Cir.1986).[7]

The parties do not dispute that Citibank has adequately alleged the transaction causation requirement of Section 10(b) in the complaint. Transaction causation is generally referred to as "but for causation," meaning that but for the misrepresentation or omission, the losses would not have occurred. Citibank alleges that Fruehauf and Kelsey–Hayes fraudulently misrepresented the amount which Fruehauf received as payment for the subsidiaries, by failing to disclose that it received a $7 million promissory note from Stoecker as part of the acquisition price. Complaint, ¶¶ 19–29. Citibank alleges that if it had been aware of Stoecker's $7 million promissory note to Fruehauf, it would not have executed the secured credit agreement with GAIL. Complaint, ¶¶ 21, 25. As the Court must accept Citibank's allegations as true in the context of a motion pursuant to Rule 12(b)(6), Citibank has adequately pled transaction causation.

As to the loss causation, or proximate cause, requirement of Section 10(b), Fruehauf and Kelsey–Hayes argue that Citi-

6. In its memorandum of law in opposition to defendants' motion to dismiss, Citibank argues that Fruehauf and Kelsey–Hayes intended to misrepresent the value of the securities of the subsidiaries, pledged as collateral for GAIL's loan, by failing to disclose Fruehauf's acceptance of a $7 million promissory note as part of the acquisition price. First, Citibank's "value theory" is not alleged with any specificity in the complaint, and thus, the Court cannot consider it at this time. *See Cosmas v. Hassett, supra*, 886 F.2d at 13 (in considering a motion pursuant to Rule 12(b)(6), a district court's inquiry is limited to the allegations contained in the complaint and any documents incorporated in the complaint). Second, the "value theory" does not appear to satisfy the "in connection with" requirement, as it does not adequately explain how the acceptance by Fruehauf of Stoecker's $7 million promissory note in lieu of cash affected the nature or value of the stock pledged as collateral. Such a theory is simply too speculative to survive a motion to dismiss pursuant to Rule 12(b)(6).

7. Judge Mukasey has noted:

[L]oss causation is basically a tort concept of proximate cause—whether the misrepresentation induced the loss ..., and therefore can be proved by a showing that is different from what is necessary to prove fraud "in connection with" a transaction. As a practical matter, however, the "in connection with" test shares with loss causation the requirement that the fraud alleged be closely enough linked to the [securities] transaction that an observer could conclude that the fraud caused the transaction. However, the "in connection with" test goes further and demands more than just mere proximity: the fraud must concern the very nature or characteristic of the securities or commodities at issue.

*Kearney, supra*, 701 F.Supp. at 425 n. 10.

bank has not adequately pled that the alleged fraud caused GAIL's default and the resulting harm to Citibank. The thrust of Fruehauf and Kelsey–Hayes' claim is that Citibank alleged that it "has suffered losses," without specifying the injuries suffered, or the required chain of causation. *See* Complaint, ¶ 38. Assuming that Citibank's losses refer to GAIL's default on its $147.5 million loan and Citibank's inability to recoup its losses through sale of the stock held as collateral, Fruehauf and Kelsey–Hayes argue that the complaint does not allege how their failure to notify Citibank about Fruehauf's three-week, $7 million loan to Stoecker caused these subsequent events. Thus, Fruehauf and Kelsey–Hayes claim that Citibank has failed to plead the required proximate causation between Citibank's reliance on the alleged misrepresentation and the loss suffered.

In the complaint, Citibank alleges that Fruehauf and Kelsey–Hayes' misrepresentation regarding the $7 million loan to Stoecker "induced [Citibank] to complete the closing of the acquisition and to make further extensions of credit to GAIL." Complaint, ¶¶ 30, 35. Citibank further alleges that it "would not have proceeded with the closing and disbursed the financing for the acquisition if it had been aware of Fruehauf's agreements and transactions with Stoecker." Complaint, ¶ 21. Moreover, Citibank alleges that "[a]s a result of the misrepresentations of Fruehauf, Kelsey–Hayes and Stoecker, Citibank has suffered losses...." Complaint, ¶ 38.

In *Bennett v. United States Trust Co. of N.Y.*, 770 F.2d 308, 314 (2d Cir.1985), the defendant-bank executed loans to the plaintiffs, the proceeds of which were used to purchase public utility securities. The plaintiffs deposited the securities in an account with the defendant as collateral for the loan. The defendant wrongly informed the plaintiffs that the margin rules of the Federal Reserve Bank did not apply to public utility stock deposited with a bank as collateral. Eventually, the collateral account became undermargined, causing a decline in the value of the securities.

The plaintiffs brought suit against the defendant under Section 10(b), claiming that the defendant's misrepresentation concerning the applicability of the margin rules caused the loss on their securities held in the collateral account. *Id.* at 313. In affirming the District Court's dismissal of the plaintiffs' Section 10(b) claim, the Second Circuit held that although the plaintiffs may have alleged transaction causation, the plaintiffs had failed to establish loss causation. *Id.* at 314. The Second Circuit found that the plaintiffs' losses were a result of their own unwise investment decisions, and that the "misrepresentation neither induced the purchase nor related to the stock's value." *Id.* Plaintiffs' "but-for allegations at most establish transaction causation.... They fail to establish the necessary loss causation; there is simply no direct or proximate relationship between the loss and the misrepresentation." *Id.* (*citing Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61–62 (2d Cir.1985)); *see also Chemical Bank, supra*, 726 F.2d at 943 (but for causation not enough to satisfy causation requirements of Section 10(b) where alleged misrepresentation related only indirectly to securities).

Similarly, in the instant action, Citibank's losses were a result of its imprudent decision to lend GAIL $147.5 million. Although Citibank may have refused to proceed with its loan to GAIL if it had known of Fruehauf's $7 million loan to Stoecker, Citibank has not alleged in the complaint how the misrepresentation was the proximate cause of GAIL's default on its loan from Citibank, and of the shortfall of the collateral in covering Citibank's losses. Citibank's decision to extend up to $147.5 million of credit to GAIL was made prior to the closing under a secured credit agreement, and probably after a thorough and independent investigation of GAIL's creditworthiness. Moreover, assuming *arguendo*, that Fruehauf and Kelsey–Hayes' alleged misrepresentation did induce Citibank to extend credit to GAIL, the loan itself is not the loss. Rather, GAIL's default on the loan and the deficiency of the collateral constitute the loss, and Citibank has failed

to plead how the alleged misrepresentation directly or proximately related to these subsequent events, or even how these events would be a reasonably foreseeable result of the alleged misrepresentation. *See Manufacturers Hanover Trust, supra,* 801 F.2d at 20–21.

Although the $7 million loan may have some implication regarding Stoecker's financial condition in early August 1987, Citibank has failed to plead how the alleged misrepresentation caused GAIL's inability to repay its long-term debt to Citibank. Stoecker repaid the $7 million loan to Fruehauf within three weeks. It appears that GAIL's default was substantially after the Stoecker–Fruehauf transaction, since Stoecker's promissory note was issued to Fruehauf on August 6, 1987, Stoecker repaid Fruehauf three weeks later, and the instant action was not commenced until May 23, 1989. Thus, it is unclear to the Court and, more importantly, Citibank has failed to allege, how the purported misrepresentation regarding the $7 million loan is causally related in any way to GAIL's default on its loan from Citibank.

Citibank's allegation that the misrepresentation by Fruehauf and Kelsey–Hayes induced it to proceed with the loan to GAIL is an attempt to analogize this litigation with other Section 10(b) inducement cases which have generally been found to satisfy the loss causation requirement. These cases usually involve a purchaser of securities claiming that he or she was induced to make an investment as a direct result of a misrepresentation regarding the value of the securities. *See Thornock v. Kinderhill Corp.,* 712 F.Supp. 1123, 1128 (S.D.N.Y.1989) (misrepresentations in an offering memorandum as to value of limited partnership shares caused plaintiff's loss on investment in shares); *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 932 (S.D.N.Y.1989) (failure to disclose compa-

ny's repurchase stock plan artificially inflated stock price and caused loss to plaintiff's investment in stock); *Horwitz, supra,* 700 F.Supp. at 721 (misrepresentations as to condition of plumbing in apartment complex owned by limited partnership directly related to plaintiff's losses in partnership due to burst pipes).[8]

The case at bar simply is not analogous to the typical Section 10(b) lawsuit. In the instant action, plaintiff-bank claims that its borrower defaulted on a loan, entered into, in part, for the purchase of securities, due to non-disclosure by defendant-seller of its acceptance of a short-term promissory note in lieu of cash for a portion of the acquisition price. Citibank has not provided the required nexus by alleging how the omission by Fruehauf and Kelsey–Hayes was causally related to GAIL's inability to repay its debt to Citibank, or the ensuing value deficiency of the stock held as collateral. Therefore, the Court finds that Citibank has not adequately pled the loss causation requirement of Section 10(b).

In accordance with the reasoning of the Court set forth above, Citibank's claims against K–H Corp. and Kelsey–Hayes for substantive violation of Section 10(b), for aiding and abetting a violation of Section 10(b), and against K–H Corp. for conspiring to violate Section 10(b) are dismissed.

### B. Common Law Claims

■ "Under New York law, [the plaintiff] must show that he was injured as a direct and proximate result of his reliance on [the defendant's] misrepresentations." *Lehman v. Dow Jones & Co., Inc.,* 783 F.2d 285, 296 (2d Cir.1986); *see also Rosen v. Spanierman,* 894 F.2d 28, 33 (2d Cir. 1990); *Cumberland Oil Corp. v. Thropp,* 791 F.2d 1037, 1044 (2d Cir.1986). Stated differently, "to establish the required causation [under New York State law], the plaintiff must show that the loss was a 'direct result of the defendant's wrongful

---

**8.** *See also Manufacturers Hanover Trust Company v. Drysdale Securities Corp.,* 801 F.2d 13, 20 (2d Cir.1986) (accounting firm's misrepresentations as to financial stability of defendant-company, a trader in government securities, induced plaintiff-bank to invest in defendant-company at a loss); *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 707 (2d Cir.1980) (misrepresentations

by employee of brokerage house regarding his expertise caused plaintiffs to invest in securities at a loss); *Schlick v. Penn–Dixie Cement Corporation,* 507 F.2d 374, 379 (2d Cir.1974) (defendant's manipulation of market value of securities induced plaintiff to purchase securities and incur a loss).

actions and [that it was] independent of other causes.'" *Bennett, supra,* 770 F.2d at 316 (*quoting Idrees v. American University of the Caribbean,* 546 F.Supp. 1342, 1350 (S.D.N.Y.1982)). For Citibank's common law fraud claims to survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must properly allege that defendants' misrepresentations were the proximate cause of Citibank's loss.

As previously discussed in detail with regard to defendants' motion to dismiss Citibank's claims under Section 10(b) of the Securities Exchange Act, the Court does not perceive the alleged causal connection between the non-disclosure of the three-week, $7 million loan and GAIL's ultimate default on the secured credit agreement with Citibank. Nor does the Court perceive how non-disclosure of the $7 million loan affected the value of the securities pledged by Stoecker and GAIL as collateral. Even accepting the allegations contained in the complaint to be true, and drawing all reasonable inferences in favor of Citibank's position, the Court must rule that Citibank has failed to allege proximate causation, and that the common law fraud claims must be dismissed.

In accordance with the reasoning of the Court set forth above, Citibank's claims against K–H Corp. and Kelsey–Hayes for substantive commission of common law fraud, for aiding and abetting the commission of common law fraud, and against K–H Corp. for conspiring to commit common law fraud are dismissed.

## CONCLUSION

Defendants K–H Corporation and Kelsey–Hayes Company's motion to dismiss plaintiff Citibank's federal securities laws claims and common law claims against them pursuant to Fed.R.Civ.P. 12(b)(6) is granted. The complaint is dismissed without prejudice. Plaintiff may file an amended complaint within forty-five (45) days of the date of this order.

SO ORDERED.