Louis ZAHARIAS, Appellant,

v.

Jay Orville GAMMILL and Norma Jean Gammill, Appellees.

No. 73040.

Supreme Court of Oklahoma.

Nov. 3, 1992.

As Corrected Jan. 12, 1993.

Rehearing Denied Jan. 12, 1993.

Charles O. Schem, Hester, Palmer & Schem, Oklahoma City, for appellant.

Harold E. Heath, Holdenville, for appellees.

SIMMS, Justice:

Louis Zaharias brought an action against Jay Orville Gammill and Norma Jean Gammill, his wife's parents, seeking damages in tort for their alleged intentional interference with his custodial rights to his children. This cause of action has never been recognized in this state, and the trial court sustained the Gammills' Motion to Dismiss Zaharias's petition for failure to state a claim upon which relief can be granted.

In his appeal, Zaharias seeks our recognition of the tort of intentional interference with custodial rights in this jurisdiction. As discussed below, we refuse to create this new tort, and we affirm the order of the district court inasmuch as the allegations in Zaharias's petition do not set forth a claim cognizable under the laws of this state. We do, however, reverse that portion of the trial court's judgment dismissing Zaharias's cause of action for the Gammills' alleged intentional infliction of emotional distress.

Zaharias alleged that he is the father of two minor children who were taken from his home by Susan Zaharias, his wife and the mother of the children. Three days *after* Mrs. Zaharias left with the children, Zaharias filed an action for legal separation in Orange County, California.

■ Zaharias further alleged that the Gammills have aided his wife in concealing the children from him even after they were made aware that he was their legal custodian by order of the California court. He claims that these facts constitute a proper cause of action for tortious interference in his parental custodial relationship with his children.

The Gammills, he alleges, committed these acts with the intent to cause him mental distress and emotional suffering, entitling him to relief for intentional infliction of emotional distress.

The function of a motion to dismiss is to test the law of the claims, not the facts supporting them. *Niece v. Sears, Roebuck & Co.*, 293 F.Supp. 792 (N.D.Okla.1968); *Citibank, N.A. v. K–H Corp.*, 745 F.Supp. 899 (S.D.N.Y.1990). Under the Oklahoma Pleading Code, as noted by Professor Fraser, a petition "should disclose the existence of the necessary elements of a legally recognized claim or cause of action." Fraser, George B., *The Petition Under the New Pleading Code*, 38 Okla.L.Rev. 245, 246 (1985).

> "In assessing the sufficiency of [a] petition, the general rule is that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief." *Niemeyer v. United States Fidelity & Guar. Co.*, 789 P.2d 1318, 1321 (Okla.1990) (citing *Valley Vista Dev. Corp. v. City of Broken Arrow*, 766 P.2d 344, 348 (Okla.1988) and *Buckner v. General Motors Corp.*, 760 P.2d 803, 812 (Okla.1988).

Not only has this Court never recognized this new tort, we now hold that such tort should not be added to the body of domestic relations/family law in Oklahoma for the reasons that follow.

First, Oklahoma already recognizes a cause of action in the parent or legal guardian of a child for the abduction or enticement of that child. 76 O.S.1981, § 8; *Johnson v. Harris*, 187 Okla. 239, 102 P.2d 940 (1940). Section 8 provides:

> "The rights of personal relation forbid:
>
> \* \* \* \* \* \*
>
> 2. The abduction or enticement of a child from a parent, or from a guardian entitled to its custody, or of a servant from his master."

■ Zaharias asserts the enactment of § 8 by the Oklahoma Legislature is a legislative adoption of the tort of custodial interference. We disagree. Section 8 grants a right of recovery for the abduction of a child, whereas, the tort of interference with

custodial relations appears to allow recovery for more than just the abduction. *See* Restatement (Second) of Torts § 700 (1977) from which the tort is derived.

 Zaharias further argues that his children were "abducted" in violation of this statute, and he cites several cases which concern the abduction of children. However, all of the cases are distinguishable because in the case at bar the "abducting" person had equal custody rights to the children who were "abducted" or "enticed" away *prior* to any temporary or final order of custody.

Recognizing this distinction, Zaharias alleges the Gammills were notified of the temporary custody order, and in violation of it, "assisted, aided and abetted" their daughter in taking the children. However, the children were taken prior to the custody order, so the Gammills could not have abducted them with knowledge of the order as Zaharias pleads. Furthermore, the petition contains no allegation of direct participation in the taking of the child. Rather, Zaharias pleads that the Gammills only aided their daughter. The petition fails to state a claim for abduction or enticement of Zaharias's children under 76 O.S.1981, § 8.

### I.

In urging this Court to recognize the tort of custodial interference, Zaharias points to many jurisdictions which have adopted it.[1] In examining the tort, our primary policy consideration must be the best interests of the children who will be the subject of such litigation. *In the Matter of Harris*, 434 P.2d 477 (Okla.1966) (in cases involving the custody of minor children the primary and paramount issue to be considered is the best interests of the child or children); *Hurt v. Hurt*, 315 P.2d 957 (Okla.1957) (the rights of children in custody proceedings take precedence over the rights of the parents).

Those courts which have considered the best interests of children have rejected the tort. In *Larson v. Dunn*, 460 N.W.2d 39,

45 (Minn.1990), the Supreme Court of Minnesota refused to create the tort because it "would create a new burden on children who are already dislocated by the dissolution of their parents' marriage." Likewise, the court in *Politte v. Politte*, 727 S.W.2d 198, 200 (Mo.Ct.App.1987), disapproved of the tort because its "primary goal ... is the vindication of one parent against the other, not necessarily the best interests of the child."

The court in *Larson* noted that evidence indicating the devastating effect of divorce upon children is mounting, citing Chambers, *Rethinking the Substantive Rules for Custody Disputes in Divorce*, 83 Mich. L.Rev. 477, 507 (1984), and Schepard, *Taking Children Seriously: Promoting Cooperative Custody after Divorce*, 64 Tex. L.Rev. 687, 703–04 (1985), as sources of such evidence. We agree with the Minnesota Supreme Court that "[f]or the good of our children, the law should seek to promote such harmony as is possible in families fractured by the dissolution." 460 N.W.2d at 45. After all, litigants in domestic relations cases "go to great lengths in battling for custody of their children." *Wood v. Wood*, 338 N.W.2d 123, 127 (Iowa 1983) (Wolle, J., dissenting). The threat of introducing such children into yet another potentially vicious legal battle between the child's parents, or one parent and some other relative, as in this case, must be avoided as it would increase the strain and stress the child is already experiencing.

*Larson*, supra, convincingly points out that recognition of a tort for custodial interference will not deter parental abductions of children. The court stated:

"The mother and grandparents in this case apparently believed they were protecting the child. A growing number of parents are hiding their children to protect them from physical and sexual abuse. *See* Myers, *Allegations of Child Sexual Abuse in Custody and Visitation Litigation: Recommendations for Improved Fact Finding and Child Protection*, 28 J.Fam.L. 1, 2 (1989). [*See*

---

1. For a list of the jurisdictions which have examined the tort, *see Wood v. Wood*, 338 N.W.2d 123, 125 (Iowa 1983) and *Larson v. Dunn*, 460 N.W.2d 39, 44 fn. 3 (Minn.1990).

*also McDougald v. Jenson,* 596 F.Supp. 680, 685 (N.D.Fla.1984) (between 25,000 and 100,000 children of broken marriages are abducted by one of the parents each year)] Studies show that allegations of sexual abuse, while sometimes fabricated, are very often genuine. *Id.* at 21. Family ties are normally stronger than the fear of money damages. If a parent or grandparent believes a child is in danger, that parent or grandparent will probably not stop to consider tort liability before acting to protect the child. It will not add to the dignity of the law if grandparents are sued for providing shelter to their children in such situations."

No allegations of physical or sexual abuse have been made at this point in the case at bar. However, the lack of such allegations in this case does not diminish the reasoning of the court in *Larson* above.

Further thought on the emotional impact of the tort of custodial interference on children is generated by other courts' use of war metaphors in describing the action. The court in *Larson* hinted that the tort could be used as a "weapon for revenge and continued hostility" which would be a "means of escalating intrafamily warfare." 460 N.W.2d at 46, 47. The dissenting opinion in *Wood* noted that parents and their attorneys would "certainly use this new weapon skillfully, if not wisely." 338 N.W.2d at 129. We further agree with the court in *Politte* which held that "[d]isarmament is needed to limit post-marital warfare, not additional armament to increase it." 727 S.W.2d at 201.

We acknowledge that some courts have recognized causes of action similar to the one Zaharias urges this Court to adopt. We are convinced that the tort of interference with custodial relations would not enhance the scheme of family law in Oklahoma, and we expressly disapprove of it.

Accordingly, Zaharias has failed to allege a cause of action cognizable under Oklahoma law. It appears beyond doubt that Zaharias cannot prove any set of facts based upon the allegations set forth in the petition which would entitle him to relief

under the laws of this state. *Niemeyer, supra.* Therefore, the trial court did not commit error in dismissing the first cause of action for failure to state a claim upon which relief can be granted.

Other avenues of recourse are of course available to Zaharias without this Court's recognition of the new cause of action in tort. For example, Oklahoma law authorizes a district court to grant a writ of habeas corpus in favor of a parent in regards to custody of their children. 12 O.S. 1991, § 1354; *Kirk v. Gross,* 270 P.2d 628 (Okla.1954). Additionally, abduction of a minor under fifteen (15) years of age is a serious crime punishable by imprisonment for up to five (5) years. 21 O.S.1991, § 1119. Relief is also available under the *Uniform Child Custody Jurisdiction Act,* 43 O.S.1991, §§ 501–27. In the event that a custody order has been violated, a citation for contempt of court could be the appropriate remedy.

## II.

Zaharias's second proposition concerns his claim for intentional infliction of mental anguish. Unlike the tort of interference with custodial relations, Oklahoma has adopted an action for intentional infliction of mental anguish or emotional distress.

In *Eddy v. Brown,* 715 P.2d 74 (Okla.1986), this Court adopted the Restatement (Second) of Torts § 46 (1977) description of the tort of intentional infliction of emotional distress. Section 46 provides, in pertinent part:

"(1) One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

In applying this standard, the Court stated:

"Conduct which, though unreasonable, is neither 'beyond all possible bounds of decency' in the setting in which it occurred, nor is one that can be 'regarded as utterly intolerable in a civilized com-

munity,' falls short of having actionable quality." 715 P.2d at 77.

An action for intentional infliction of emotional distress should be treated as separate and distinct from an action for interference with custodial relations. *Plante v. Engel,* 124 N.H. 213, 469 A.2d 1299, 49 A.L.R.4th 1 (N.H.1983). *See also Eddy v. Brown, supra* (intentional infliction of emotional distress is an independent tort). Hence, although Zaharias's action for custodial interference is disallowed, his alternative action meets the test for the sufficiency of a petition which was stated in *Niemeyer, supra.*

■ Based upon the allegations made in his petition, it appears that Zaharias could perhaps prove a set of facts which would entitle him to relief under an intentional infliction of emotional distress theory. Therefore, the trial court erred in dismissing Zaharias's intentional infliction of emotional distress cause of action for failure to state a claim upon which relief can be granted.

This Court is not adjudging the merits of the cause of action, nor do we consider whether or not the Gammill's conduct was "extreme" or "outrageous." Indeed, *Eddy* requires the trial court to initially "determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 standards." 715 P.2d at 76. Only when the trial court finds that reasonable men would differ in an assessment of the issue is the tort properly submitted to the jury.

An example of a court holding an abducting father and his relatives liable for intentional infliction of mental anguish is seen in *Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D.N.Y.1978), wherein the court specifically found the defendants' conduct outrageous. Such conduct included threats to abduct the child after custody was awarded to the mother, actual abduction after a visitation agreement was negotiated, perjury regarding the whereabouts of the child at a *habeas corpus* proceeding instituted by the mother, and false imprisonment of the child in a foreign country. The trial court should examine the facts of the case at bar carefully for such conduct before determining whether it is sufficient to go to the jury.

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED with directions to reinstate Zaharias's claim for intentional infliction of emotional distress.

LAVENDER, HARGRAVE, ALMA WILSON, SUMMERS and WATT, JJ., concur.

KAUGER, J., concurs in result.

OPALA, C.J., concurs in result in part I, concurs in part II.

HODGES, V.C.J., concurs in part I, dissents in part II.