2000 OK CIV APP 128

John PAULSON, individually and as the parent, next friend and guardian of Joseph Paulson, a minor child, Plaintiff/Appellant,

v.

Richard E. STERNLOF, PH.D., and Diane Willis, PH.D., jointly and severally, Defendants/Appellees.

No. 94,332.

Court of Civil Appeals of Oklahoma, Division No. 1.

July 7, 2000.

Rehearing Denied Aug. 11, 2000.

Certiorari Denied Oct. 17, 2000.

Christopher B. Lyons, Pryor, OK, for Appellant.

Tom King, Leslie Wileman, Oklahoma City, OK, for Appellee, Diane Willis.

Kenneth Elliott, Devan Pederson, Kent Eldridge, Oklahoma, City, OK, for Appellee, Richard E. Sternlof.

## OPINION

CARL B. JONES, Presiding Judge:

¶ 1 This is a malpractice action against two psychologists stemming from a Virginia custody dispute over Joseph Paulson, a minor. Plaintiff, John Paulson, appeals the summary judgment granted to the two Defendants. He also appeals the subsequent order awarding costs to the Defendants.

¶ 2 Joseph Paulson was born in 1988 to his unmarried parents, Jan Browder and John Paulson. There was a custody action in Virginia resulting in custody ultimately being awarded to the father, John Paulson, in 1991. At the time custody was awarded to father, the Virginia court found that the mother had made repeated, unsubstantiated and untrue allegations accusing the father of physical and sexual abuse of the child.

¶ 3 In January, 1993, Joseph's mother, Jan Browder, without permission of the father or of the Virginia courts, brought Joseph to her parents' home in Oklahoma apparently fearing that the child was being sexually abused by the father. The mother, with the assistance of an attorney determined that an independent professional psychological evaluation of the child would be appropriate and helpful to the court in assessing the allegations of sexual abuse. Mother's attorney knew that Diane Willis, Ph.D., was a highly regarded child psychologist and was also mother's aunt. The attorney contacted Dr. Willis for help in identifying a reputable psychologist who could perform an independent evaluation of the child for the court. Dr. Willis recommended Dr. Richard Sternlof, Ph.D., of Oklahoma City. She contacted Dr. Sternlof who told her that he would be willing to do an evaluation for purposes of the court proceeding in Talequah.

¶ 4 Dr. Sternlof met with Jan Browder in February, 1993. She informed him that her son, Joseph, had been sexually abused by his father, John Paulson, and that D.H.S. had been contacted regarding these allegations and had begun doing interviews. She also advised Dr. Sternlof that the court in Talequah had jurisdiction over the matter. Dr. Sternlof then met with Joseph on five separate occasions. In May, 1993, Dr. Sternlof testified at the custody hearing in Cherokee County. He determined that it was possible that sexual abuse had occurred and strongly recommended further evaluation.

¶ 5 When Defendant, Diane Willis, learned that her niece, Jan Browder, had brought Joseph to Oklahoma, she advised her to notify the father immediately because her actions were illegal and wrong. Dr. Willis was made aware that the Oklahoma D.H.S. had been notified and was investigating. Dr. Willis never had a contractual or doctor-patient relationship with anyone involved in this case. In 1991, Dr. Willis did have a minor involvement with the child and his parents. After the Virginia determination of custody in the father's favor, a "facilitator" was appointed to evaluate the parties and make recommendations to the court on visitation issues. Dr. Willis had several occasions to confer by telephone with Dr. Zuckerman, the facilitator, in an effort to facilitate his efforts with regard to the mother and her extended family. She was acting as a concerned family member and not in any professional capacity.

¶ 6 When Joseph was not returned to the father in Virginia, he then brought habeas corpus and custody actions in Cherokee County. Those were concluded in June, 1993, with an order to the mother to return the child to Virginia and present him to the court there on July 25, 1993. That apparently was done.

¶ 7 In the instant action, John Paulson sued both Dr. Sternlof and Dr. Willis for professional and personal negligence. It was alleged that the Defendants should have known that the child was under the jurisdiction of the Virginia courts; they should have known of the child's ongoing medical/psychological treatment and therapy in Virginia; they should have known that the mother had illegally taken the child out of Virginia; they failed to inquire into Virginia's jurisdiction and of the issues litigated there; they failed to notify state authorities of mother's unlawful flight with the child from Virginia and of their whereabouts in Oklahoma; and, they damaged the already "inflamed" relationship between the mother and father.

¶ 8 The personal negligence claims can be collectively referred to as the tortious interference with Appellant's custodial rights to his child. Such cause of action has been specifically disallowed by the Oklahoma Su-

preme Court in *Zaharias v. Gammill*, 1992 OK 149, 844 P.2d 137. ("We are convinced the tort of interference with custodial relations would not enhance the scheme of family law in Oklahoma and we expressly disapprove of it.") *Id.* at 140, 844 P.2d 137.

¶ 9 The claims for professional negligence or malpractice against Sternlof can be summarized by the allegation that he had no right to conduct an evaluation of Joseph Paulson and the evaluation he did was done negligently. Sternlof contends, among other things, that he had no duty to Appellant.

¶ 10 Although the Oklahoma Supreme Court has yet to rule on this issue, other states have. Texas courts have dealt squarely with this issue. In *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex.1994), the father had custody of his son. For a period of time the father left the son in the temporary custody of maternal grandmother while father was moving to Florida. While son was staying with grandmother he allegedly indicated to his mother that father had sexually assaulted him. A criminal investigation resulted and mother had son evaluated by Bird, a psychologist. After her investigation, Bird submitted an affidavit stating that it was her conclusior that son had been sexually abused by his father. Criminal charges were brought as was a civil action by mother to modify custody. The criminal charges and civil claims were ultimately dismissed and father regained custody. Father then sued Bird, the psychologist. The Texas Supreme Court held that as a matter of law, there is no professional duty running from a psychologist to a third party to not negligently misdiagnose a child's condition. This conclusion was reached primarily because of the lack of a physician-patient relationship between the father and the psychologist. Other states have similarly held. See, e.g. *Zamstein v. Marvasti*, 240 Conn. 549, 692 A.2d 781 (1997); *Flanders v. Cooper*, 706 A.2d 589 (Maine 1998); *Doe v. McKay*, 183 Ill.2d 272, 233 Ill.Dec. 310, 700 N.E.2d 1018 (1998). But see, *Althaus by Althaus v. Cohen*, 710 A.2d 1147 (Pa.1998), which has taken a contrary view.

¶ 11 Under these circumstances, and given the opportunity, it is likely the Oklahoma Supreme Court would hold similarly to the Texas Supreme Court and the majority of states where this issue has been litigated. Thus, it is the holding of this Court that Dr. Sternlof owed no duty to Plaintiff.

¶ 12 Although not pled in the Petition, father states in his response to Sternlof's Motion for Summary Judgment that his primary claim against Sternlof is for intentional infliction of emotional distress. This claim fails as well. There is an absolute privilege for communications made preliminary to proposed judicial or quasi-judicial proceedings in favor of attorneys, parties and witnesses. This privilege bars defamation actions as well as those for intentional infliction of emotional distress. *Kirschstein v. Haynes*, 1990 OK 8, 788 P.2d 941. Dr. Sternlof's involvement in this matter from the very beginning was for the purposes of a court proceeding. He is thus immune from a claim of defamation or intentional infliction of emotional distress.

¶ 13 Father also alleged that Sternlof failed to report the abuse to the D.H.S. as required by 21 O.S.1991 §§ 846 and 846.1 (renumbered as 10 O.S. Supp.1995 §§ 7103 and 7104). The record is replete with evidence that D.H.S. was already informed of the suspected abuse by the time of Sternlof's involvement. In any event, the child abuse reporting statutes do not create a private right of action. Knowing and willful failure to report is a criminal misdemeanor. § 7103(C). There is no provision, however, for civil liability.

¶ 14 The foregoing analysis also applies to Appellee, Willis. In addition, Dr. Willis never examined or evaluated the child. She had no doctor-patient relationship with Appellant or with the child. Her involvement was limited to helping mother's attorney find a qualified psychologist to evaluate the child and to act as a facilitator between those involved. Without the necessary doctor-patient relationship, Willis simply had no duty to Appellant that, if breached, could be the basis of a malpractice claim.

¶ 15 The appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Kirkpatrick v. The Chrysler Corporation*, 1996 OK 136, 920 P.2d 122, 124. Based on a review of the record before the trial court, summary judgment was properly granted to both Dr. Sternlof and Dr. Willis.

¶ 16 Regarding the trial court's award of costs, Sternlof was awarded $7,275.30 and Willis was awarded $5,749.30. These amounts included their share of the expenses for deposing the Plaintiff and the two expert witnesses listed by the Plaintiff, as well as photocopying expenses. The award of costs to the prevailing party is authorized by 12 O.S.1991 § 929, and may include those items set forth in 12 O.S. Supp.1997 § 942 and 12 O.S. Supp.1994 § 3226(B)(3)(c)(1).

¶ 17 Plaintiff's principal objection was that summary judgment was granted primarily on the basis of the law rather than the facts, and the depositions were thus unnecessary for the presentation of Defendants' legal arguments. Both Defendants, however, relied on and attached to their respective motions for summary judgment portions of all three depositions. Obviously, they thought the depositions were necessary discovery and necessary to the success of their motions for summary judgment. The trial court obviously agreed and no abuse of discretion is shown.[1]

¶ 18 Appellant's motions for oral argument, to file a brief in support of his petition in error, and his application for attorney fees and costs are denied.

¶ 19 AFFIRMED.

¶ 20 GARRETT, J., and BUETTNER, J., concur.

---

1. The amount of costs awarded is subject to the discretion of the trial court. *Atchley v. Hewes,*