IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2015 Session

## WILLIAM GOETZ v. DONEL AUTIN, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00221812       James F. Russell, Judge**

_____

**No. W2015-00063-COA-R3-CV – Filed February 10, 2016**
_____

This is an appeal from the trial court's grant of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss. In the proceedings below, the plaintiff filed an amended complaint alleging that false and defamatory statements made about him by the defendants, along with the defendants' subsequent lawsuit against him, caused him to suffer severe physical and emotional distress and incur $150,000 in attorney's fees. The trial court dismissed the amended complaint after determining that it fails to state a claim upon which relief could be granted. Having reviewed the amended complaint and thoroughly considered the arguments raised on appeal, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Larry Parrish, Memphis, Tennessee, for the appellant, William Goetz.

J. Lewis Wardlaw, Memphis, Tennessee, for the appellees, Donel Autin and Dana Autin.

### OPINION

#### BACKGROUND AND PROCEDURAL HISTORY

On May 18, 2012, Plaintiff/Appellant William Goetz initiated this lawsuit by filing a complaint in Shelby County Circuit Court against Defendants/Appellees Donel and Dana

Autin (collectively, the "Autins").[1]  The Autins responded by filing a joint motion to dismiss the complaint.  While the Autins' motion to dismiss was pending, Goetz filed an amended complaint on October 22, 2012.  In pertinent part, the amended complaint contains the following allegations:

4.      Mr. Autin and Mrs. Autin have made defamatory statements to Mr. Goetz's family members, neighbors and friends, subjecting Mr. Goetz to contempt and ridicule and threatening his job. At the time that the statements were communicated, Mr. Autin and Mrs. Autin knew that the statements were false.

5.      On or about May 12, 2010, Mr. Autin and Mrs. Autin instituted an action against Mr. Goetz alleging defamation, slander, and intentional infliction of emotional distress in the Circuit Court of Shelby County, Tennessee.

6.      The lawsuit filed by Mr. Autin and Mrs. Autin had no reasonable basis and lacked probable cause.

7.      In filing their lawsuit, Mr. Autin and Mrs. Autin had an ulterior motive. The sole purpose [for which] Mr. Autin and Mrs. Autin filed the lawsuit against Mr. Goetz was to obscure an extramarital relationship [of Mr. Autin's]. In so filing, Mr. Autin and Mrs. Autin acted with malice towards Mr. Goetz.

8.      Mr. Autin and Mrs. Autin committed an act in the use of process [] other than such as would be proper in the regular prosecution of the charges alleged. Specifically, the improper purpose was a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, to muffle Mr. Goetz and to risk his job . . . by the use of the process as a threat.

9.      The lawsuit filed by Mr. Autin and Mrs. Autin was terminated in Mr. Goetz's favor.

---

[1] Goetz also named International Paper, Inc. as a defendant in the original complaint. However, International Paper, Inc. is not named in the amended complaint and was dismissed as a party to the proceedings by a consent order entered on November 2, 2012.  Accordingly, International Paper, Inc. is not a party to this appeal, and its participation at the early stages of this case does not merit discussion.

10. On or about March 9, 2012, Mr. Autin and Mrs. Autin voluntarily dismissed their lawsuit without compromise or settlement. Such voluntary dismissal was not taken for the purpose to refile in another forum.

11. The false statements and subsequent lawsuit filed by Mr. Autin and Mrs. Autin were intentional, reckless, and outrageous.

12. The lawsuit filed by Mr. Autin and Mrs. Autin led to severe physical and emotional injury to Mr. Goetz.

13. As a result of the lawsuit that Mr. Autin and Mrs. Autin filed against Mr. Goetz, Mr. Goetz incurred attorneys' fees in the amount of approximately $150,000.

The amended complaint requests a judgment against the Autins of $150,000 for the attorney's fees Goetz incurred in the May 2010 lawsuit and $1,000,000 in punitive damages.

On November 26, 2012, the Autins filed a joint motion to dismiss Goetz's amended complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6) for failure to state a claim upon which relief can be granted. The Autins maintained that although Goetz did not designate the specific theories of liability on which he intended to rely in the amended complaint, he appeared to assert four distinct causes of action: (1) defamation, (2) malicious prosecution, (3) abuse of process, and (4) intentional infliction of emotional distress ("IIED"). They argued that because Goetz's defamation and IIED claims were based on alleged defamatory statements made prior to the filing of the Autins' lawsuit against Goetz in May 2010, those claims were barred by the one-year statute of limitations in Tennessee Code Annotated section 28-3-104(a)(1). Next, the Autins asserted that the malicious prosecution claim should be dismissed because, as the amended complaint states, the underlying lawsuit was voluntarily dismissed by the Autins and was therefore not terminated in Goetz's favor. Lastly, the Autins argued that the abuse of process claim should be dismissed because the amended complaint does not allege that the Autins took any subsequent improper action after the initiation of their lawsuit against Goetz in May 2010.

On April 2, 2013, Goetz filed a response in which he addressed each of the four causes of action cited in the Autins' motion to dismiss. Goetz argued that the defamation claim was not barred by the statute of limitations because it was based on oral and written defamatory statements made in the course of the Autins' underlying lawsuit against him within six months of his original complaint. He further argued that the IIED claim was likewise not barred by the statute of limitations because he did not discover that his physical

injuries were caused by stress related to the Autins' defamatory statements and the ongoing litigation until August 2011. Goetz asserted that the abuse of process claim should not fail because the Autins took numerous improper actions following the initiation of their May 2010 lawsuit, including: (1) seeking four temporary restraining orders intending to "muzzle" Goetz, (2) asking for the case to be sealed, (3) discarding potentially damaging evidence, (4) offering to settle if Goetz would state in writing that Mr. Autin had not had an extramarital affair, and (5) offering Goetz $25,000 to sign a document absolving the Autins of any wrongdoing. Lastly, Goetz appeared to concede that the claim for malicious prosecution was precluded by the Tennessee Supreme Court's decision in *Himmelfarb v. Allain*, 380 S.W.3d 35, 40 (Tenn. 2012), which held that a voluntary nonsuit without prejudice is not a favorable termination for purposes of a malicious prosecution claim.[2] Notably, Goetz did not assert that the amended complaint establishes any causes of action other than the four cited by the Autins in their motion to dismiss, nor did he request permission to file a second amended complaint at that time.

On August 16, 2013, the parties appeared before the trial court to make oral arguments on the Autins' motion to dismiss. At the outset of the hearing, the trial court noted that although Goetz's specific theories of liability were "not abundantly clear" from the amended complaint, the parties appeared to have agreed that four potential causes of action were at issue. The trial court discussed the amended complaint's allegations with regard to each of the potential claims and announced its conclusion that the amended complaint "simply does not state a cause of action upon which relief can be granted." Additionally, the trial court stated that "no form, or shape of amendment would be sufficient to, let's say, breathe life into this litigation." On September 25, 2013, the trial court entered a written order granting the Autins' motion to dismiss and dismissing the amended complaint with prejudice.

On October 25, 2013, Goetz filed a post-judgment motion titled "Plaintiff's Motion to Alter or Amend and Memorandum in Support." In the post-judgment motion, which was purportedly filed pursuant to Tenn. R. Civ. P. 59.04, Goetz argued that the trial court's conclusion that the amended complaint fails to state a claim for relief was erroneous. Among

---

[2] While Goetz did not expressly concede that the amended complaint fails to state a viable claim for malicious prosecution in his response to the Autins' motion to dismiss, his discussion of the claim essentially amounted to an acknowledgement of that fact. Apart from setting forth the elements of a *prima facie* claim, the only discussion of malicious prosecution in the response stated:

> In *Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012), the Tennessee Supreme Court concluded that a voluntary nonsuit without prejudice is not a favorable termination for purposes of a malicious prosecution claim. The prior case filed by [the Autins] was dismissed by voluntary nonsuit without prejudice on March 9, 2012. While there were several hearings, the trial court's order did not address the merits of the case.

other things, Goetz asserted for the first time that the amended complaint states actionable claims against the Autins for a civil rights violation and for conspiracy. Goetz urged the trial court to correct its errors by setting aside the order of dismissal.

The trial court conducted a hearing on Goetz's post-judgment motion on February 14, 2014. During the course of the hearing, the trial court raised the issue of whether Goetz's post-judgment motion, though purportedly filed as a motion to alter or amend under Tenn. R. Civ. P. 59.04, was actually a motion to reconsider not recognized by the Tennessee Rules of Civil Procedure. The trial court asked the parties to submit additional briefs addressing that issue and its effect, if any, on the trial court's jurisdiction over the case. On November 21, 2014, following submission of the additional briefs, the trial court entered an order denying Goetz's post-judgment motion. Notably, the trial court expressly stated in the order that Goetz's post-judgment motion was actually a motion to reconsider:

> The Court has now reviewed the September 25, 2013 Dismissal Order, the August 16, 2013 and February 14, 2014 hearing transcripts along with the briefing and supplemental briefing and concludes and is well convinced that the pending Plaintiff's Motion to Alter or Amend is actually a Motion to Reconsider, which is denied.

Goetz filed a notice of appeal to this Court on December 22, 2014.

## ISSUES PRESENTED

Goetz raises the following issues on appeal, as we have restated them from his appellate brief:

    1.    Whether the trial court's September 25, 2013 order dismissing the amended complaint is void.

    2.    If the trial court's September 25, 2013 order is not void, whether it is reversible.

    3.    If the trial court's September 25, 2013 order is neither void nor reversible, whether the trial court's November 21, 2014 order denying Goetz's motion to alter or amend is void or reversible as a violation of Goetz's due process rights.

The Autins raise the following issues on appeal, as we have restated them from their appellate brief:

1	Whether this Court lacks jurisdiction to consider the substantive issues raised on appeal because Goetz's post-judgment motion did not extend the deadline for filing a notice of appeal, and his notice of appeal was therefore not timely filed.

2.	Whether the trial court erred in dismissing the amended complaint for failure to state a claim upon which relief can be granted.

## DISCUSSION

The review of a trial court's grant or denial of a motion to dismiss involves a question of law. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011). A motion to dismiss filed pursuant to Tenn. R. Civ. P. 12.02(6) requires a court to determine only whether the pleadings state a claim upon which relief can be granted. Such a motion challenges "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The motion "admits the truth of all of the relevant and material allegations contained in the complaint, but it asserts that the allegations fail to establish a cause of action." *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)). In considering a motion to dismiss, the court is required to construe the complaint liberally, presuming that all of the relevant and material allegations in the complaint are true and giving the plaintiff the benefit of all reasonable inferences. *Trau-Med of Am. Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002); *see also Webb*, 346 S.W.3d at 426 ("Tennessee follows a liberal notice pleading standard, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court."). A complaint subject to dismissal based on the expiration of the statute of limitations fails to state a claim upon which relief can be granted. *See Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 546 (Tenn. Ct. App. 2013). This Court's review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Lind*, 356 S.W.3d at 896.

This appeal also involves the application of the Tennessee Rules of Civil Procedure and the Tennessee Rules of Appellate Procedure. The construction and application of procedural rules are issues of law that this Court reviews de novo with no presumption of correctness. *Id*. (citations omitted). Although the procedural rules are not statutes, the rules governing statutory construction apply in their interpretation. *See Thomas v. Oldfield*, 279 S.W.3d 259, 261 (Tenn. 2009). When a procedural rule is clear, our responsibility is simply to enforce the written language without complicating the task. *See Lind*, 356 S.W.3d at 896. With the foregoing principles in mind, we turn now to the issues presented in this appeal.

### *Timeliness of Goetz's Notice of Appeal*

As an initial matter, we must address a jurisdictional issue regarding the timeliness of Goetz's notice of appeal. The filing of a timely notice of appeal is mandatory and jurisdictional in all civil cases. *Hutcheson v. Barth*, 178 S.W.3d 731, 733 (Tenn. Ct. App. 2005). If the notice of appeal is not filed in compliance with the requirements of Tenn. R. App. P. 4, the appellate court is without jurisdiction to consider the issues raised by the parties on appeal. *Hutcheson*, 178 S.W.3d at 733. When the record presents a question regarding the timeliness of a notice of appeal, we must therefore address it first before proceeding to the remaining issues.

The trial court's order dismissing the amended complaint was filed on September 25, 2013. Because it resolved all of the parties' rights and claims and left nothing for the trial court to adjudicate, the September 25, 2013 order was a final judgment that triggered commencement of the thirty-day period within which to file a post-judgment motion or notice of appeal. *See Ball v. McDowell*, 288 S.W.3d 833, 836–37 (Tenn. 2009) (citing Tenn. R. Civ. P. 59.04; Tenn. R. App. P. 4(a)-(b)). Goetz did not file a notice of appeal until December 22, 2014, more than a year after the expiration of the thirty-day period. Goetz did, however, file a post-judgment motion on October 25, 2013, titled "Plaintiff's Motion to Alter or Amend and Memorandum in Support." The critical jurisdictional question, then, is whether Goetz's post-judgment motion tolled the running of the time for filing his notice of appeal. If it did, then Goetz's notice of appeal, filed within thirty days after the entry of the trial court's order denying the post-judgment motion, is timely. If it did not, Goetz's notice of appeal was not timely filed, and this Court lacks jurisdiction to consider the substantive issues Goetz attempts to raise on appeal.

Tenn. R. App. P. 4(a) requires an appealing party to file a notice of appeal within thirty days after the date of entry of the judgment being appealed. The thirty-day deadline may be extended by the filing of certain post-judgment motions; however, not every post-judgment motion has the effect of extending the deadline for a notice of appeal. *See, e.g.*, *Daugherty v. Lumberman's Underwriting Alliance*, 798 S.W.2d 754, 757–58 (Tenn. 1990). Only the filing of one or more of the four post-judgment motions specifically listed in Tenn. R. Civ. P. 59.01 and Tenn. R. App. P. 4(b) will operate to extend the time for taking steps in the regular appellate process. The four post-judgment motions specified in those rules are as follows: "(1) a motion under Tenn. R. Civ. P. 50.02 for judgment in accordance with a motion for a directed verdict; (2) a motion under Tenn. R. Civ. P. 52.02 to amend or make additional findings of fact; (3) a motion under Tenn. R. Civ. P. 59.02 for a new trial; and (4) a motion under Tenn. R. Civ. P. 59.04 to alter or amend the judgment." *Lee v. State Volunteer Mut. Ins. Co., Inc.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *6 (Tenn. Ct. App. Jan. 21, 2005).

In determining whether a post-judgment motion is one of the specified motions that will operate to extend the deadline for filing a notice of appeal, however, appellate courts cannot simply rely on the motion's title. In recognition of Tenn. R. Civ. P. 8.05's directive that "[n]o technical forms of pleading or motions are required," the Tennessee Supreme Court has instructed that courts facing such a decision should consider the substance of the motion, rather than its title or form. *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). Accordingly, courts must parse through the body of the motion to determine whether it requests the sort of relief available through one of the four motions specified in the procedural rules. *Lee*, 2005 WL 123492, at *7.

The Autins contend that, although Goetz's post-judgment motion was titled "motion to alter or amend" and was purportedly filed pursuant to Tenn. R. Civ. P. 59.04, it was, as the trial court determined, a motion to reconsider in substance. They argue that because motions to reconsider are not recognized in Tennessee and do not operate to extend the time for taking steps in the regular appellate process, the thirty-day deadline for filing a notice of appeal from the trial court's September 25, 2013 order expired on October 25, 2013. Accordingly, they assert that Goetz's December 22, 2014 notice of appeal was untimely filed, and this Court lacks jurisdiction to consider the issues that Goetz attempts to raise on appeal.

As the Autins have asserted, the Tennessee Rules of Civil Procedure do not recognize motions "to reconsider" a trial court order. *See Harris v. Chern*, 33 S.W.3d 741, 743 (Tenn. 2000). As such, if Goetz's post-judgment motion was, in substance, a motion to reconsider, then it had no effect on the thirty-day filing period, and we must dismiss Goetz's appeal as untimely filed. We must therefore examine the body of the post-judgment motion to determine what sort of relief it requests. In doing so, we note initially that when past courts have analyzed a post-judgment motion to determine whether it extended the filing period, they have usually done so to determine whether the appeal can be saved because the erroneously titled motion was, in substance, a motion recognized by the procedural rules. *See Tenn. Farmers Mut. Ins. Co.*, 970 S.W.2d at 455 ("[W]e conclude that the "Motion to Reconsider" . . . is in substance a Rule 59.04 motion to alter or amend."); *Bemis Co., Inc. v. Hines*, 585 S.W.2d 574, 575 (Tenn. 1979) (holding that the plaintiff's "Motion to Set Aside Decree and Restore the Cause to the Docket" was, in substance, a motion under Tenn. R. Civ. P. 59.02 for a new trial); *Lee*, 2005 WL 123492, at *7 (holding that the plaintiffs' "Petition to Rehear" was, when given "the most charitable reading possible," a motion under Tenn. R. Civ. P. 59.04 to alter or amend); *Hawkins v. Hawkins*, 883 S.W.2d 622, 624 (Tenn. Ct. App. 1994) (holding that the plaintiff's "Motion to Reconsider" was, in substance, a motion under Tenn. R. Civ. P. 59.04 to alter or amend). Oftentimes, those courts have relied on the directive of Tenn. R. App. P. 1 that the procedural rules "shall be construed to secure the just, speedy, and inexpensive determination of every proceeding *on its merits*." *See Tenn. Farmers Mut. Ins. Co.*, 970 S.W.2d at 455 (emphasis added). Nevertheless, if substance

controls when a post-judgment motion is submitted in a form not recognized by the procedural rules, it must also control in the opposite circumstance. *See U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 826–27 (Tenn. Ct. App. 2012) (examining the substance of a post-judgment motion correctly titled as a Tenn. R. Civ. P. 59.04 motion to alter or amend before determining that it extended the filing deadline). To conclude otherwise would permit parties to burden trial courts and delay litigation by filing unnecessary post-judgment motions seeking to relitigate previously adjudicated matters simply by submitting them in a form recognized by the procedural rules.[3] Accordingly, we must examine the substance of Goetz's "Plaintiff's Motion to Alter or Amend and Memorandum in Support" to determine whether it was a proper motion under Tenn. R. Civ. P. 59.04.

A motion to alter or amend filed under Tenn. R. Civ. P. 59.04 "can provide relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect." *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009). The trial court may grant such a motion (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, in unique circumstances, the judgment should be amended to correct a clear error of law or to prevent injustice. *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001). A motion to alter or amend should not, however, be granted if it simply seeks to relitigate matters that have already been adjudicated. *Id.* Moreover, a motion to alter or amend should not be used to raise or present new, previously untried, or unasserted theories or legal arguments. *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005).

In his post-judgment motion, Goetz argued for the first time that the amended complaint states claims against the Autins for a civil rights violation and for conspiracy. He also asserted, however, that the trial court made errors of law in dismissing the amended complaint. While some of the specific arguments in his post-judgment motion are vague,[4] Goetz basically argued that the trial court failed to draw reasonable inferences in his favor and erroneously considered matters outside of the pleadings. Thus, although the post-judgment motion impermissibly sought to present previously unasserted theories and legal

---

[3] Goetz readily agrees that the title of his "Plaintiff's Motion to Alter or Amend" is not relevant to this Court's analysis. In a lengthy discussion of this point in his appellate brief, he asserts that the post-judgment motion "could have been entitled 'Motion' or could have been entitled 'Mary Had A Little Lamb' or could have had no title at all without in any way changing or affecting the substance of what relief was sought by the motion."

[4] In several instances, Goetz's post-judgment motion discusses legal principles without explaining how they relate to the case. For example, although Goetz argues that Tennessee courts may not take judicial notice of the records of other courts, he does not specify any such action by the trial court in this case.

arguments, it arguably also requested that the trial court correct a clear error of law. We therefore conclude that it was a proper motion to alter or amend under Tenn. R. Civ. P. 59.04.

Although we conclude that Goetz's post-judgment motion tolled the thirty-day filing period in this case, we do so with a word of caution. Parties should not attempt to present previously unasserted theories or legal arguments or relitigate previously adjudicated matters under the guise of filing a Tenn. R. Civ. P. 59.04 motion to alter or amend. Mindful of the strong judicial preference for deciding cases on their merits, *see Discover Bank v. Morgan*, 363 S.W.3d 479, 490 n.20 (Tenn. 2012), we have been somewhat generous in our reading of the post-judgment motion at issue in this case. We cannot, however, guarantee that courts will always take a similar approach. As such, parties should be wary of relying on the courts' interpretation of their post-judgment motions to extend the filing deadline imposed by Tenn. R. App. P. 4(a).[5] In any event, because Goetz's post-judgment motion was timely filed, and we construe it as a motion to alter or amend under Tenn. R. Civ. P. 59.04, we conclude that it had the effect of extending the deadline for filing a notice of appeal. Goetz's notice of appeal, filed within thirty days after entry of the order denying his post-judgment motion, was, therefore, timely filed. We turn now to the substantive issues raised on appeal.

### The Trial Court's Dismissal of the Amended Complaint

On appeal, Goetz argues first that the trial court's September 25, 2013 order is void because it departed from the *stare decisis* precedent of the Tennessee Supreme Court by reviewing the amended complaint under a plausibility standard rejected by the Tennessee Supreme Court in *Webb*, 346 S.W.3d at 430. Goetz summarizes his argument on this point as follows:

> Appellant contends that, where there is indubitable *stare decisis* precedent from the Supreme Court which is indubitably applicable to facts before a Trial Court or an appellate court and, in the face of such precedent, the Trial Court and/or appellate court adjudicates a result which, on its face, is contrary to that *stare decisis* precedent from the Supreme Court, the Trial Court or appellate court adjudicates nothing, i.e., the Trial Court and appellate court lack Authority to adjudicate anything under such circumstances, i.e., the adjudication is a nonadjudication, i.e., is void.

---

[5] We note that Tenn. R. App. P. 4(e) allows a party filing a post-judgment motion to avoid risking its appeal by permitting it to also file a premature notice of appeal. The rule provides that a notice of appeal filed prior to the trial court's ruling on a timely post-judgment motion "shall be treated as filed after the entry of the order disposing of the motion and on the day thereof." Tenn. R. App. P. 4(e). Accordingly, a party filing a timely post-judgment motion may ensure its right to appeal by also filing a notice of appeal within thirty days of the trial court's judgment.

As an initial matter, we conclude that this argument is without merit. A judgment is void only when the trial court lacks personal or subject matter jurisdiction or rules on a matter wholly outside of the pleadings without the consent of the parties. *Turner v. Turner*, 437 S.W.3d 257, 270 (Tenn. 2015). As long as the trial court has jurisdiction over the parties and issues before it, even an erroneous judgment is valid and binding unless it is reversed on appeal. *See Mullins v. State*, 294 S.W.3d 529, 537 n.3 (Tenn. 2009) ("However, even an erroneous judgment is entitled to preclusive effect as long as all the other prerequisites have been met . . . ."). Thus, even a determination that the trial court erroneously applied the plausibility pleading standard rejected in *Webb* would not render the September 25, 2013 order void.

Alternatively, Goetz contends that this Court should reverse the trial court's September 25, 2013 order dismissing the amended complaint for failure to state a claim. Specifically, he asserts that if it is construed liberally and if all reasonable inferences are allowed in his favor, the amended complaint states the following distinct claims: (1) civil rights violation by a state actor, (2) abuse of process, and (3) IIED.[6] We will address each potential claim in turn.

### Civil Rights Violation

Goetz contends that the amended complaint states a claim for relief under Title 42, U.S.C. § 1983 because the Autins usurped the power of the State of Tennessee through court process to violate Goetz's civil rights by filing the underlying lawsuit against him. Goetz made this assertion for the first time in his motion to alter or amend after all of the other claims had been dismissed. As we noted previously, a motion to alter or amend may not be used to present unasserted theories or legal arguments. *In re M.L.D.*, 182 S.W.3d at 895; *see also, e.g.*, *Van Grouw v. Malone*, 358 S.W.3d 232, 236 (Tenn. 2010) (holding that the plaintiff waived issues predicated on willful ignorance by failing to raise them until his motion to alter or amend). Additionally, a party may not raise an issue for the first time on appeal. *Id.* Despite submitting briefs and participating in oral arguments prior to the trial court's ruling on the motion to dismiss the amended complaint, Goetz did not argue that the amended complaint states a claim for a civil rights violation until his motion to alter or amend. He therefore waived the issue, and we will not consider it on appeal.

---

[6] Goetz asserts that the amended complaint also states a claim for relief for civil conspiracy. We note, however, that civil conspiracy is not an independent cause of action in Tennessee. *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004) ("The simple act of conspiracy does not furnish a substantive ground of action." (quoting *Tenn. Publ'g Co. v. Fitzhugh*, 52 S.W.2d 157, 158 (Tenn. 1932))). We therefore decline to address it as a separate cause of action.

- 11 -

### *Abuse of Process*

Goetz contends that the trial court erred in concluding that the amended complaint does not state a claim for abuse of process. Goetz maintains that the allegations contained in the four corners of the amended complaint establish both elements of the tort of abuse of process—an ulterior motive and an improper act in the use of process. The Autins, on the other hand, contend that the amended complaint fails to allege the second element of the tort. They argue that their initiation of a lawsuit against Goetz does not constitute an improper act in the use of the process. Having thoroughly considered the parties' arguments, we agree with the Autins.

Tennessee recognizes two tort actions that provide relief for the alleged misuse of legal process by another: malicious prosecution and abuse of process. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999). To establish a claim for malicious prosecution, a plaintiff must allege that the defendant maliciously brought a prior lawsuit against the plaintiff without probable cause and that the prior lawsuit was terminated in the plaintiff's favor. *Id*. (citing *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992)). To establish a claim for abuse of process, a plaintiff must allege the existence of an ulterior motive and an act in the use of process other than such as would be proper in the regular prosecution of the charge. *Id*. (citing *Priest v. Union Agency*, 125 S.W.2d 142, 143 (Tenn. 1939)). "Abuse of process differs from malicious prosecution in that abuse of process lies 'for the improper use of process *after* it has been issued, not for maliciously causing process to issue.'" *Id*. (quoting *Priest*, 125 S.W.2d at 143). The mere initiation of a lawsuit, though accompanied by a malicious ulterior motive, does not constitute an abuse of process *Id*. at 555–56 (citations omitted). The requirement that there must be a subsequent improper act is designed to "accommodate the freedom of an individual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation;" it also "serves to prevent a chilling effect on claims well-founded in fact and law and asserted for the legitimate purpose of redressing a grievance." *Id*. at 556.

The Tennessee Supreme Court outlined the foregoing principles in 1999 in its opinion in *Bell ex rel. Snyder* before concluding that the allegation that a party filed a conservatorship petition in Tennessee for the sole purpose of delaying litigation in Florida was insufficient to state a claim for abuse of process. *Id*. at 556–57. In so concluding, the court emphasized that the "[m]ere filing of the petition is not sufficient." *Id*. at 556. Goetz contends, however, that the supreme court "significantly increased the scope of the [abuse of process] claim" three years later in *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383 (Tenn. 2002). In *Givens*, the court was asked to determine whether the complaint stated a claim for abuse of process against the defendants in their use of discovery subpoenas, depositions, and

interrogatories. *Id.* at 402. Among other things, the complaint alleged that the defendants issued more than seventy discovery subpoenas for medical and other records to obtain embarrassing information not related to the case and confidential information from the plaintiff's psychologist. *Id.* The defendants argued that the complaint did not state a claim for abuse of process because it failed to allege an action after the issuance of the subpoenas that showed an improper use of process. *Id.* The supreme court rejected the defendants' argument. The court stated that although *Bell ex rel. Snyder* and other cases contained language that appeared to support the defendants' position, the defendants "read these cases too broadly." *Id.* at 403. The court held that "[o]nce a suit has been filed and other processes have been unjustifiably issued, a plaintiff is not then also required to show some further misuse of that process to state a claim for relief." *Id.*

Citing *Givens*, Goetz argues that it is enough to allege that the Autins initiated a lawsuit against him for an improper purpose because, by doing so, they placed him within the dominion and control of the trial court. In our view, however, *Givens* clearly did not dispose of the requirement that the plaintiff allege some misuse of process *after* the initiation of the lawsuit. First, the alleged abuse of process in *Givens* took place during discovery, well after the underlying lawsuit was initiated. More importantly, however, the supreme court in *Givens* expressly stated that a complaint for abuse of process must allege "some additional abuse of process after the *original* processes of the court, i.e., the complaint, summons, and responsive pleadings, have been issued." *Id.* The court reasoned that "the additional use requirement must be so limited because it is this requirement alone that distinguishes this tort from that of malicious prosecution, which arises solely upon the filing of a complaint without probable cause." *Id.*

The amended complaint does not allege any improper use of process by the Autins after the original processes of the court.[7] Moreover, the amended complaint's assertion that the Autins "committed an act in the use of process . . . other than such as would be proper in the regular prosecution of the charges alleged," is a legal conclusion couched as a fact, which we are not required to accept as true. *See Webb*, 346 S.W.3d at 427 ("[C]ourts are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts."). The mere institution of a lawsuit against Goetz, even if done for an improper purpose, is not sufficient to establish a claim for abuse of process. *See Bell ex rel. Snyder*, 986 S.W.2d at 556 ("Mere filing of the petition is not sufficient."). Because the amended complaint fails to allege one of the essential elements of a claim for abuse of process, it fails to state a claim for abuse of process.

---

[7] In his response to the Autins' motion to dismiss, Goetz listed a number of improper actions allegedly taken by the Autins during their prosecution of their underlying lawsuit against Goetz. However, none of those allegations were included in the amended complaint, and Goetz did not seek permission to file a second amended complaint at that time.

## *Intentional Infliction of Emotional Distress*

Goetz contends that the trial court erred in concluding that the amended complaint fails to state an IIED claim. Goetz maintains that if all reasonable inferences are allowed in his favor, the allegations in the amended complaint establish the necessary elements of an IIED claim. The Autins, on the other hand, contend that the allegations in the amended complaint clearly demonstrate that Goetz's IIED claim is barred by the one-year statute of limitations of Tenn. Code Ann. § 28-3-104(a)(1). Additionally, they argue that the actions giving rise to the claim are protected by the litigation privilege. Once again, the Autins are correct.

Under Tennessee law, a person who intentionally or recklessly causes severe emotional distress to another person by extreme and outrageous conduct is liable to that person for such emotional distress and for bodily harm resulting from the conduct. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Accordingly, to establish an IIED claim, a plaintiff must establish "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012). The plaintiff's burden to demonstrate the elements of an IIED claim "is not an easy burden to meet." *Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 703 (Tenn. 2012). The Tennessee Supreme Court has adopted the following standard from the Restatement (Second) of Torts:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Bain*, 936 S.W.2d at 622–23 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Because IIED claims are analogous to personal injury actions, the one-year statute of limitations in Tenn. Code Ann. § 28-3-104(a)(1) applies. *See Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 329 (6th. Cir. 1989).

As it relates to a claim for IIED, the following allegations from the amended complaint are pertinent:

> 4. Mr. Autin and Mrs. Autin have made defamatory statements to Mr. Goetz's family members, neighbors and friends, subjecting Mr. Goetz to contempt and ridicule and threatening his job. At the time that the statements were communicated, Mr. Autin and Mrs. Autin knew that the statements were false.

> 5. On or about May 12, 2010, Mr. Autin and Mrs. Autin instituted an action against Mr. Goetz alleging defamation, slander, and intentional infliction of emotional distress in the Circuit Court of Shelby County, Tennessee.

> . . . .

> 11. The false statements and subsequent lawsuit filed by Mr. Autin and Mrs. Autin were intentional, reckless, and outrageous.

> 12. The lawsuit filed by Mr. Autin and Mrs. Autin led to severe physical and emotional injury to Mr. Goetz.

Accordingly, it appears that two separate alleged actions form the basis of Goetz's IIED claim: (1) false and defamatory statements that the Autins made about Goetz to his family members, neighbors, and friends, and (2) the Autins' lawsuit against Goetz filed in May 2010. We will examine both to determine whether either of the alleged actions can form the basis for an IIED claim.

To the extent that Goetz's IIED claim is based on false and defamatory statements the Autins allegedly made about Goetz to his family members, neighbors, and friends, it is barred by the one-year statute of limitations in Tenn. Code Ann. § 28-3-104(a)(1). While the amended complaint does not expressly indicate when the alleged statements were made, it does state that the Autins' lawsuit against Goetz was filed "subsequent[ly]." On its face, the amended complaint states that the lawsuit was initiated in May 2010. It is therefore clear that the alleged false statements must have been made prior to May 2010. This lawsuit was initiated with Goetz's filing of the original complaint in May 2012. As such, to the extent that the IIED claim is based on statements allegedly made by the Autins, the amended complaint violates the one-year statute of limitations in Tenn. Code Ann. § 28-3-104(a)(1) on its face.

Alternatively, to the extent that the IIED claim is based on the underlying lawsuit, it is barred by the litigation privilege. The litigation privilege embodies a general recognition that "statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged and cannot be the predicate for liability in an action for libel, slander, or invasion of privacy." *Jones v. State*, 426 S.W.3d 50, 57 (Tenn. 2013) (quoting *Lambdin Funeral Serv. v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978)). The privilege holds true even when the statements are made maliciously or corruptly. *Lambdin Funeral Serv.*, 559 S.W.2d at 792. Underlying the litigation privilege is the policy that access to the judicial process and the freedom to institute an action without fear of being sued based on statements made in the course of the proceeding is "so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he [or she] has been wronged thereby." *Issa v. Benson*, 420 S.W.3d 23, 28 (Tenn. Ct. App. 2013) (quoting *Jones v. Trice*, 360 S.W.2d 48, 51 (Tenn. 1962)). As the Tennessee Supreme Court has long recognized, "In the imperfection of human nature it is better even that an individual should suffer a wrong than that the general courts of justice should be impeded and fettered by constant and perpetual restraints and apprehensions on the part of those who administer it." *Hayslip v. Wellford*, 263 S.W.2d 136 (Tenn. 1953) (quoting *Webb v. Fisher*, 72 S.W. 110, 112 (Tenn. 1903)). In the same vein, an individual claiming to have suffered an emotional injury in the regular course of adversarial litigation must yield to the need for a judicial process free from the fear of liability stemming from statements or actions made in the course of the proceedings. *See Robinowitz v. Wahrenberger*, 966 A.2d 1091, 1096–97 (N.J. Super. Ct. App. Div. 2009) (holding that the defendant could not be held liable for emotional harm to the plaintiff caused by deposition questions in the underlying lawsuit); *Kaye v. Trump*, 873 A.D.3d 579, 579 (N.Y. App. Div. 2009) ("[T]he alleged statements and actions occurred in the context of adversarial litigation and therefore cannot provide a foundation for the [IIED] claim."); *Jones v. Coward*, 666 S.E.2d 877, 880 (N.C. Ct. App. 2008) (holding the defendant could not be liable for IIED where the claim was based on a statement protected by the litigation privilege); *Paulson v. Sternlof*, 15 P.3d 981, 984 (Okla. Civ. App. 2000) (holding that the litigation privilege bars actions for defamation as well as IIED). In light of the policy interests protected by the litigation privilege, we conclude that, as a matter of law, the mere initiation and prosecution of a lawsuit, even if allegedly for the purpose of harassment and intimidation, cannot be the basis of an IIED claim. The trial court was correct in ruling that the amended complaint fails to state an IIED claim.

### *Remaining Claims*

Goetz's initial brief on appeal did not contain any argument that the trial court erred in concluding that the amended complaint fails to state actionable claims for defamation and malicious prosecution. Nevertheless, perhaps out of an abundance of caution, the Autins

argued that the trial court's ruling was correct with regard to those claims in their response to Goetz's appellate brief. Goetz then addressed the claims in his reply brief. Because both parties submitted arguments on those claims, we address them briefly.[8]

The amended complaint fails to state an actionable claim for defamation. Much of the foregoing discussion regarding the amended complaint's potential IIED claim is equally applicable to defamation. To the extent that the defamation claim is based on statements that the Autins allegedly made prior to initiation of the May 2010 lawsuit, the claim is barred by the applicable statute of limitations. *See* Tenn. Code Ann. § 28-3-103 (creating a six-month statute of limitations for slander); Tenn. Code Ann. § 28-3-104(a)(1) (creating a one-year statute of limitations for libel). Additionally, to the extent that the defamation claim is based on statements made during the course of the underlying lawsuit, it is barred by the litigation privilege. *See* discussion *supra*.

The amended complaint also fails to state a claim for malicious prosecution. To prevail on a malicious prosecution claim, "[a] plaintiff must show (a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005), *overruled on other grounds by Himmelfarb*, 380 S.W.3d at 41. In *Himmelfarb v. Allain*, the Tennessee Supreme Court held that, as a matter of law, a voluntary dismissal without prejudice does not constitute a favorable termination for purposes of a malicious prosecution claim. 380 S.W.3d at 40. The amended complaint states that the Autins voluntarily dismissed the underlying lawsuit against Goetz in March 2012. It is therefore clear from the face of the amended complaint that Goetz cannot prove the third element of a malicious prosecution claim. Goetz contends that the supreme court's opinion in *Himmelfarb*, which was issued on August 28, 2012, should not apply retroactively because this lawsuit was initiated in May 2012. Generally, however, judicial decisions in civil cases that overrule prior cases are given retrospective effect. *Hill v. City of Germantown*, 31 S.W.3d 234, 239 (Tenn. 2000) (citations omitted). "Retrospective effect will be 'denied only if such an application would work a hardship upon those who have justifiably relied upon the

---

[8] Generally, an issue not addressed in a party's initial brief on appeal is waived. *Artist Bldg. Partners v. Auto-Owners, Mut. Ins. Co.*, 435 S.W.3d 202, 220 n.5 (Tenn. Ct. App. 2013). This rule protects the appellee in most cases because permitting the appellant to raise issues for the first time in its reply brief would result in a fundamental unfairness to the appellee, as the appellee may not respond to a reply brief. *Id.* In this case, however, the issues were not raised for the first time in Goetz's reply brief; rather, they were raised in the Autins' response. In a reply brief, appellants may present a rebuttal of the arguments advanced in the appellee's brief. *Denver Area Meat Cutters & Emp'rs Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006); *see also* Tenn. R. App. P. 27(c).

old precedent.'" *Id.* (quoting *Marshall v. Marshall*, 670 S.W.2d 213, 215 (Tenn. 1984)). The circumstances of this case do not warrant such an exception.

### *Due Process*

Lastly, Goetz contends that the September 25, 2013 order granting the Autins' motion to dismiss and the November 21, 2014 order denying Goetz's post-judgment motion violated his due process right to a full and fair hearing on the merits. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), *quoted in Guseinov v. Synergy Ventures, Inc.*, 467 S.W.3d 920, 927 (Tenn. Ct. App. 2014). Due process does not require that the plaintiff in every civil case actually have a hearing on the merits. *See Guseinov*, 467 S.W.3d at 928 ("[The defendant's] due process rights were not violated by the trial court's proper utilization of the summary judgment mechanism contained in the Tennessee Rules of Civil Procedure."). "[T]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 231 (Tenn. 2010) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Goetz was afforded those procedures in this case. The trial court properly dismissed the amended complaint utilizing a process set forth by the Tennessee Rules of Civil Procedure, and did not violate Goetz's due process rights in doing so.

### CONCLUSION

Based on the foregoing, the judgment of the Shelby County Circuit Court is affirmed. The costs of this appeal are assessed against the Appellant, William Goetz, and his surety, for which execution may issue. We remand this case to the trial court for the collection of costs, enforcement of the judgment, and for further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE